United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAELYNN BENHAM-DWYER,

Plaintiff,

v.

THE NEIMAN MARCUS GROUP LLC,

Defendant.

Case No.  24-cv-08643-JCS

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. No. 12

## I.    INTRODUCTION

On December 2, 2024, Defendant The Neiman Marcus Group LLC ("Neiman Marcus Group") removed this case from the San Francisco Superior Court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446. Presently before the Court is Plaintiff's Motion for an Order Remanding Case to State Court Pursuant to 28 U.S.C. §1447(c) and Order to Set Aside the Stipulation ("Motion").  A hearing on the Motion was held on February 19, 2025. For the reasons stated below, the Motion is GRANTED.[1]

## II.    BACKGROUND

### A.    Factual Background

This is a personal injury case based on a May 19, 2023 accident that occurred in a Neiman Marcus store on Stockton Street, in San Francisco, California. Dkt. no. 1-1 (Compl.).  Plaintiff filed a complaint in San Francisco Superior Court on July 9, 2024.  A Statement of Damages filed with the complaint reflects that Plaintiff seeks $3 million in general damages and almost $2 million in special damages, including medical expenses and lost earnings. Dkt. no. 14-2

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1    (Hernandez Decl., Ex. B).

2         Plaintiff's attorney's legal secretary, Maira Hernandez, "engaged ABC Legal Services on

3    July 11, 2024, to effectuate service upon Defendant, Neiman Marcus Group LLC ([e]rroneously

4    sued as 'Neiman Marcus' and 'NMG Holdings')."  Dkt. no. 14 (Hernandez Decl.) ¶ 3. According

5    to Hernandez, she "provided ABC Legal Services with the Summons, Complaint, Civil Case

6    Cover Sheet, Notice of CM Hearing document, ADR packet, Statement of Damages for Neiman

7    Marcus, and Statement of Damages for NMG Holdings."  *Id.*  She also searched the website of the

8    California Secretary of State and determined that the agent for service of process for Neiman

9    Marcus Group was 1505 Corporation CT Corporation System located at 330 N. Brand Blvd.

10   Glendale, CA 91203 ("Brand Blvd. address").  *Id.* ¶ 4 & Ex. C (printout of search result).

11        According to a Proof of Service of Summons dated July 14, 2024 and signed by process

12   server Jocelyn Ramos, the "Party to Serve" was "Neiman Marcus" care of its agent, 1505

13   Corporation CT Corporation System, at the Brand Blvd. address.  Dkt. no. 14-4 (Hernandez Decl.,

14   Ex. D ("July 14 Proof of Service")).  The process server checked the box for substitute service

15   rather than personal service, stating that she left, *inter alia*, the complaint, summons and a

16   statement of damages with Diana Ruiz, "an individual who identified themselves as the person

17   authorized to accept with identity confirmed by subject reaching for docs when named."  *Id.*  The

18   process server stated further that "[t]he individual accepted service with direct delivery. The

19   individual appeared to be a brown-haired Hispanic female contact 35-45 years of age, 5'-5'4" tall

20   and weighing 120-140 lbs."  *Id.* The process server also mailed the papers to the agent for service

21   of process at the Brand Street address, as required to effectuate substitute service.  *Id.*

22        Hernandez received the proof of service on July 16, 2024 and contacted ABC Legal

23   Services that day to ask whether the proof of service should have stated that the documents had

24   been served by personal service rather than substitute service.  Dkt. no. 14-4 (Hernandez Decl.) ¶

25   5 & Ex. E.  ABC Legal Services responded on July 18, 2024 that it had asked the process server to

26   provide an amended proof of service correcting the error.  *Id.* According to Hernandez, she "did

27   not notify Plaintiff's counsel that the proof of substituted service incorrectly reflected substitute

28   service or that it was being corrected because [she] took action to correct it 4 days after becoming

United States District Court
Northern District of California

United States District Court
Northern District of California

1   aware of the issue and thought it would be resolved quickly." *Id. ¶ 6.*

2          On October 15, 2024, at 9:34 a.m., Defendant's attorney, Mary Bevins, called Brian

3   Yamada, an associate attorney at the Law Offices of Brian Nelson, which is representing Plaintiff.

4   Dkt. no. 13 (Yamada Decl.) ¶ 5.  At 11:16 am on the same date, Bevins sent an email to Plaintiff's

5   attorney stating, "[w]e represent Neiman Marcus and would like 15 days to respond to the

6   complaint. Please confirm this is acceptable."  Dkt. no. 13-3 (Yamada Decl., Ex. 3) (October 15,

7   2024 email exchange).  According to Yamada, he returned the call at approximately 3 pm and

8   "stipulated to grant Defendant a 15 day extension of time to respond to the Complaint based on

9   [the] erroneous proof of substitute service, which [he] sent to Ms. Bevins."  Dkt. no. 13 (Yamada

10  Decl.) ¶  5. Yamada states that "[a]t that time, [he] was unaware that [his] secretary, Maira

11  Hernandez, was conversing with ABC Legal to correct the erroneous proof of substitute service

12  with a corrected proof of personal service."  *Id.*  In an email Yamada sent to Bevins the same day,

13  he confirmed that he and Bevins "spoke today and that we agreed to grant a 15-day extension of

14  time to respond to the Complaint."  Dkt. no. 13-3 (Yamada Decl., Ex. 3) (October 15, 2024 email

15  exchange).

16          In a December 27, 2024 meet and confer letter from Neiman Marcus Group to Plaintiff's

17  counsel, attorney Mary Bevins stated that in the October 15, 2024 telephone conversation,

18  Plaintiff's attorney:

19              agreed that you provided our office proof of sub service confirming
                that proper service was not effectuated. However, you asked our
20              office to enter an agreement and sign a notice of acknowledgment and
                receipt as it related to a wholly different entity, our client The Neiman
21              Marcus Group LLC which would start the time limit to file a response
                to the Complaint. By signing the document, Defendant, The Neiman
22              Marcus Group LLC (erroneously sued as "Neiman Marcus" and
                "NMG Holdings Company, Inc.") and counsel for the Plaintiff
23              stipulated that the time to file a responsive pleading for this entity
                would start to run on or about December 2, 2024.

24              . . .

25              Plaintiff's counsel entered into a stipulation to have Neiman Marcus
                Group LLC enter an appearance as such, and waive any service of the
26              complaint which may or may not have earlier happened.

27

28

1    Dkt. no. 13-5 (Yamada Decl., Ex. 5).[2]

2        On October 22, 2024, Hernandez followed up with ABC Legal Services, having still not

3    received the corrected proof of service, and on November 5, 2024 a corrected proof of service,

4    dated October 22, 2024 and reflecting that the papers had been personally served, arrived at the

5    offices of Plaintiff's counsel.  Dkt. no. 14 (Hernandez Decl.) ¶ 7 & Exs. E (email exchange), F

6    ("October 22 Proof of Service").  It was not until December 17, 2024, however, that Plaintiff's

7    attorney became aware of the October 22 Proof of Service.  Dkt. no. 13 (Yamada Decl.) ¶ 7.

8        Also on October 22, 2024, Hernandez sent the Notice of Acknowledgment and Receipt.

9    Notice of Removal, Ex. B.  That form listed the correct defendant and stated that "[i]f you return

10   this form to the sender, service of a summons is deemed complete on the day you sign the

11   acknowledgment of receipt below."  *Id.*   Counsel for the Neiman Marcus Group signed the form

12   on October 30, 2024.  *Id.*  The parties agreed at the motion hearing that as of that date (if not

13   before), service was properly effected on the Neiman Marcus Group.  They also stipulated that in

14   none of their communications, whether written or oral, did they specifically discuss or enter into

15   any explicit agreement relating to the deadline for removing the case to federal court.

16       Neither the July 14, 2024 Proof of Service nor the October 22, 2024 Proof of Service was

17   filed in the state court action.  Dkt. no. 14 (Hernandez Decl.) ¶ 9.

18       **B.    Contentions of the Parties**

19           **1.  Motion**

20       In the Motion, Plaintiff asserts, as a preliminary matter, that although the service papers

21   were directed to "Neiman Marcus," and the Defendant's name is "Neiman Marcus Group, LLC",

22   this was merely a harmless "misnomer" that should be overlooked because the proper defendant

23   understood that it was being sued.  Motion at 6-7 (citing *Kerr-McGee Chemical Corp. v. Superior*

24   *Court*, 160 Cal.App.3d 594, 604 (1984); *Datskow v. Teledyne, Inc., Continental Products Div*.,

---

[2] At oral argument, the parties appeared to agree that their agreement relating to service actually occurred in a subsequent conversation approximately a week after the October 15 conversation. Attorney Brian Yamada conceded that in that conversation he expressed the opinion that the original service of the complaint, on July 12, 2024, was likely defective.  Apparently, in that conversation Plaintiff's counsel also agreed to a request by Neiman Marcus Group extend the deadline to respond to December 2, 2024.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    899 F.2d 1298, 1302-04 (2nd Cir. 1990)).

2    Plaintiff further asserts that the removal was untimely because the complaint and summons

3    were served on July 12, 2024 and the thirty-day deadline under 28 U.S.C. § 1446(b) began to run

4    at that point. *Id.* at 10-12. In support of this contention, Plaintiff asserts that Neiman Marcus

5    Group knew at the time the complaint and summons were served on it that all of the requirements

6    for diversity jurisdiction were met. *Id.* In particular, Plaintiff notes that Neiman Marcus Group

7    knew its own citizenship (Delaware, where it is incorporated, or Dallas, Texas, where its principal

8    place of business is located) and also knew from an incident report made to Neiman Marcus on the

9    date of the accident that Plaintiff resides in Martinez, California. *Id.* at 11 (citing Notice of

10   Removal and Declaration of Mary E. Bevins attached as Exhibit 2 Pg. 3, ¶6 and Pg. 7, ¶6 ("The

11   incident report and medical records produced by Plaintiff confirmed that Plaintiff is a resident of

12   California.")). At a minimum, Plaintiff contends, Neiman Marcus Group became aware that

13   Plaintiff is a California resident when her attorney, on October 29, 2024, sent a demand letter with

14   attached medical bills reflecting her address. *Id.* at 11; Yamada Decl., Ex. 6 (demand letter).

15   Plaintiff also contends the amount in controversy was apparent from the time the complaint was

16   served because of the statement of damages that was attached to the complaint reflected that more

17   than $75,000 dollars was in controversy. Motion at 11 (citing Hernandez Decl., Ex. B).

18   Finally, Plaintiff asserts that she should be "relieved of the stipulation because of Plaintiff

19   counsel's mistake, inadvertence, and mistake of fact which led him to enter into the stipulation."

20   *Id.* at 13-15.

21   **2. Opposition**

22   In its Opposition, Neiman Marcus Group argues that the thirty-day "removal clock" did

23   not begin running on July 12, 2024 because the "initial purported service was both irregular and

24   confusing." Opposition at 2. Neiman Marcus Group further asserts that on October 15, 2024, the

25   parties agreed that Neiman Marcus Group would have until December 2, 2024 to respond to the

26   complaint. *Id.* at 3. According to Neiman Marcus Group, it "reasonably relied on the parties'

27   clear stipulation that Defendant's responsive pleading—including removal—was due on

28   December 2, 2024" and that stipulation should be enforced. *Id.* at 5.

United States District Court
Northern District of California

1    Neiman Marcus Group argues that "Plaintiff cannot legitimately contend that the thirty-day

2    period started to run from an earlier date when (1) no valid, conclusive proof of service existed

3    then, (2) the recognized agent was misnamed or mislabeled, and (3) Plaintiff's counsel expressly

4    requested that Defendant stipulate to an entirely new acknowledgment of service." *Id.* at 5-6. It

5    further asserts that "[t]he Ninth Circuit's strict approach to removal timeliness does not require a

6    defendant to anticipate or divine a correct service date in the face of contradictory proofs." *Id.* at

7    6 (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)).   According to

8    Neiman Marcus Group, "[o]nly when a defendant receives a clear 'paper' that unequivocally

9    reveals removability does the clock begin." *Id.*   Neiman Marcus Group contends it did not

10   receive a "clear paper" showing removability until the parties "sign[ed] the stipulation and Notice

11   of Acknowledgment." *Id.* at 6.

12   Neiman Marcus Group also argues that the "misnomer" in naming Defendant "Neiman

13   Marcus" rather than "The Neiman Marcus Group LLC" "[d]oes [n]ot [r]ender [r]emoval

14   [u]ntimely or [d]effective." *Id.* at 7.  Neiman Marcus Group "does not dispute that it is the proper

15   entity. Rather, the crux is that, despite the minor misnomer, the initial proofs of service were

16   patently unclear, causing Plaintiff to stipulate to a new, operative date." *Id.*

17   Finally, Neiman Marcus Group argues that it has established that all of the requirements of

18   diversity jurisdiction are satisfied. *Id.* at 8.

19   **3.  Reply**

20   In her Reply, Plaintiff reiterates her argument that service on July 12, 2024 was proper and

21   therefore, the thirty-day clock began to run on that date.  Reply at 3. Plaintiff points out that

22   Defendant offered no evidence in support of its Opposition to show that it was not properly served

23   on July 12, 2024 and did not argue as much.  *Id.*  Plaintiff further asserts that Defendant knew on

24   July 12, 2024 that the case was removable based on the Statement of Damages included with the

25   complaint, Defendant's knowledge of its own citizenship, and the incident report Plaintiff had

26   submitted at the time of the accident reflecting her California address.  *Id.* at 3-4.  Plaintiff argues

27   that even if Defendant did not know her domicile at the time of service, it learned that she resides

28   in California no later than October 29, 2024, when her attorney served a demand package with at

1    least three medical bills stating her address. *Id.* at 4 (citing Yamada Decl., Ex. 6).

2         Plaintiff further contends it should be relieved of the stipulation due to mistake of fact. *Id.*

3    at 5-6.

4    **III.    ANALYSIS**

5         **A.    Legal Standards Governing Removal**

6         A defendant may remove any civil action that could have been filed originally in federal

7    court. 28 U.S.C. § 1441(a). To establish that a case is removable on the basis of diversity

8    jurisdiction, the removing party must show (1) complete diversity between all properly served and

9    joined parties, and (2) that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

10   When determining whether removal is proper under Section 1441, "any doubts as to the right of

11   removal must be resolved in favor of remanding to state court." *Durham v. Lockheed Martin*

12   *Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th

13   Cir.1992) (per curiam)).

14        The time for removing an action to federal court is governed by 28 U.S.C. § 1446(b)(1),

15   which provides:

16            The notice of removal of a civil action or proceeding shall be filed
              within 30 days after the receipt by the defendant, through service or
17            otherwise, of a copy of the initial pleading setting forth the claim for
              relief upon which such action or proceeding is based, or within 30
18            days after the service of summons upon the defendant if such initial
              pleading has then been filed in court and is not required to be served
19            on the defendant, whichever period is shorter.

20   28 U.S.C.A. § 1446(b)(1).  Notwithstanding the words "service or otherwise" in Section 1446(b),

21   the Supreme Court has held that mere receipt of a copy of the complaint is not sufficient to start

22   the thirty-day clock running. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356

23   (1999).  The *Murphy* Court found that in enacting Section 1446(b), Congress did not intend to

24   abrogate "the necessity for something as fundamental as service of process." *Id.* at 355 (quoting

25   *Silva v. Madison*, 69 F.3d 1368, 1376–1377 (7th Cir. 1995)). The Court observed that "the so-

26   called 'receipt rule'—starting the time to remove on receipt of a copy of the complaint, however

27   informally, despite the absence of any formal service—could . . . operate with notable unfairness

28   to individuals and entities in foreign nations." *Id.* at 356.

United States District Court
Northern District of California

1    However, the "thirty-day time period [for removal] . . . starts to run from defendant's

2    receipt of the initial pleading only when that pleading affirmatively reveals on its face" the facts

3    necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690–91

4    (9th Cir. 2005) (citation omitted).   Thus, "notice of removability under § 1446(b) is determined

5    through examination of the four corners of the applicable pleadings, not through subjective

6    knowledge or a duty to make further inquiry." *Id.* at 694.  If it is not apparent from the face of the

7    complaint that the case is removable, "the thirty-day clock doesn't begin ticking until a defendant

8    receives 'a copy of an amended pleading, motion, order or other paper' from which it can

9    determine that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250

10   (9th Cir. 2006) (quoting 28 U.S.C. § 1446(b)).

11       **B.    Discussion**

12       While the parties disagree about whether the initial service of the complaint, on July 12,

13   2024, was proper, there is no dispute that at least as of  October 30, 2024, when Neiman Marcus

14   Group signed the Notice of Acknowledgment and Receipt, the correct defendant had been

15   properly served.[3]   Neiman Marcus group also conceded at the hearing that by October 29, 2024, it

16   was on notice of Plaintiff's California address and that the amount in controversy was over

17   $75,000 and therefore knew that the requirements for diversity jurisdiction were met no later than

18   that date.  Therefore, under the legal standards set forth above, the thirty-day clock for Neiman

19   Marcus Group's removal began to run no later than October 30, 2024, giving rise to a deadline for

20   removal of November 29, 2024, at the latest.

21       Defendant, however, contends the removal was timely under a theory of estoppel, claiming

22   that it "reasonably relied on the parties' clear stipulation that Defendant's responsive pleading—

23   including removal—was due on December 2, 2024." Opposition at 5. Yet Neiman Marcus Group

24   concedes that there was no explicit agreement that the deadline for removal would be extended

25

26   [3] The Court does not decide whether service on July 12, 2024 was proper as it is unclear when the
     Neiman Marcus Group first understood that Plaintiff was suing that entity.  As counsel for Neiman
27   Marcus Group suggested at the motion hearing that she first understood this when she spoke to
     Plaintiff's counsel, in mid or late October, the Court cannot say for sure that the naming of the
28   wrong Neiman Marcus entities in the original summons was a harmless error that should be
     overlooked under California law.

United States District Court
Northern District of California

1    and that in fact, that issue was never discussed.  It appears that Neiman Marcus Group assumed

2    that a stipulation extending the time to respond to the complaint also extended the removal

3    deadline, but district courts in the Ninth Circuit have reached the opposite conclusion.

4            In *Transport Indemnity Co. v. Financial Trust Company*, the court found that "the thirty-

5    day period may not be enlarged by . . . mere consent of the Plaintiff to extend the time for

6    removal." 339 F. Supp. 405, 407 (C.D. Cal. 1972) (citing *Green v. Zuck*, 133 F.Supp. 436

7    (S.D.N.Y.1965); *Dutton v. Moody*, 104 F.Supp. 838 (S.D.N.Y.1952); *Robinson v. La Chance*, 209

8    F.Supp. 845 (D.C.N.C.1962)).  It recognized, however, that "certain conduct on the part of the

9    Plaintiff, which conduct is sometimes referred to as 'waiver' and sometimes referred to as

10   'estoppel', does preclude the Plaintiff from objecting to a late removal petition." *Id.* (citations

11   omitted).  But a finding of waiver or estoppel must be supported by "affirmative conduct or

12   unequivocal assent of a sort which would render it offensive to fundamental principles of fairness

13   to remand." *Id* at 408 (citation omitted).

14           The facts in *Transport Indemnity we*re similar to the facts here:

15               Defendants, in pressing a claim that Plaintiffs are estopped to object
                 to their removal of the case, rely on a pre-removal stipulation between
16               counsel. The stipulation was negotiated by telephone and is evidenced
                 by two letters, one from Plaintiffs' counsel to Defendants' counsel
17               dated November 3, 1971, and the other from Defendants' counsel to
                 Plaintiffs' counsel dated November 15, 1971. The stipulation as
18               embodied in these documents is the usual form of stipulation used in
                 the State Courts whereby one counsel grants to his opponent an
19               extension of time in which to "move, answer or otherwise respond."
                 Such an extension was originally granted on November 3, 1971, to
20               expire January 7, 1972. It was extended by the letter of November 15,
                 1971, to expire January 15, 1972. *Neither letter makes any reference*
21               *to a possible removal of the case to the Federal Court. Neither*
                 *counsel claims to have mentioned a possible removal to the Federal*
22               *Court in the telephone conversations which preceded both letters.*
                 Defendants' counsel nevertheless claim that they interpreted the
23               stipulation to be an agreement by Plaintiffs' counsel that the latter
                 would not object to a removal to the Federal Court if defense counsel
24               later decided to remove the action.

25   *Id.* at 408 (emphasis added).  The court concluded, based on these facts, that there was no

26   agreement that the plaintiff would waive its right to object to removal based on timeliness, holding

27   that "a stipulation merely to extend the time to move, answer or otherwise respond does not have

28   the effect of authorizing or consenting to jurisdiction of the Federal Court under a later removal

United States District Court
Northern District of California

9

1    which was untimely filed." *Id.*   The court continued:

> One can imagine a case in which defense counsel, just prior to the end
> of the statutory thirty-day period, had made the determination to
> remove the case and, finding himself pressed for time, communicates
> that fact to Plaintiffs' counsel and obtains from Plaintiffs' counsel a
> specific agreement that the latter would not object to the removal
> petition on timeliness grounds if defense counsel was a few days late
> in filing it. That might well constitute a true estoppel because defense
> counsel has reasonably relied to his detriment on the representations
> of his opponent. But that is not the instant case. There was no such
> reliance. Any unilateral reliance by defense counsel was
> unreasonable.

*Id.* at 408-409.

Other courts have reached the same conclusion.  *See, e.g., Gooss v. GEICO Cas. Co.*, No.

2:13-CV-01364-GMN, 2014 WL 201613, at *2 (D. Nev. Jan. 16, 2014) (finding "[b]ased on the

language of the letter from Plaintiff's counsel granting GEICO 'an extension to answer the

complaint,'" that there was no agreement "to extend the deadline for filing a notice of removal"

and observing that "even if Plaintiff had intended to permit GEICO an extension to file its removal

notice, such an agreement would not have extended the time limit");  *Littlefield v. Cont'l Cas. Co.*,

475 F. Supp. 887, 890 (C.D. Cal. 1979) ("The stipulation between the parties' attorneys to extend

the time for Continental Casualty to respond to the complaint was not effective in and of itself to

extend the deadline for removal, unless the Court were willing to construe it as a waiver by the

plaintiff").

The Court finds the reasoning in *Transport Indemnity* to be persuasive and reaches the

same conclusion here.  The parties stipulated to an extension of the deadline to respond to the

complaint; they did not enter into a stipulation extending the deadline to remove.  In the absence

of affirmative conduct on the part of Plaintiff on which Neiman Marcus Group relied to its

detriment, such as an affirmative representation that she would not object to removal on the basis

of timeliness if the removal occurred by December 2, 2024, the stipulation extending Neiman

Marcus Group's deadline to respond to the complaint does not render its removal timely.

Finally, the Court rejects Plaintiff's request to set aside the stipulation on the basis of

mistake.  Plaintiff has cited no authority suggesting that a mistake as to the facts resulting from

counsel's miscommunication (or lack of communication) with staff within the firm, or failure to

United States District Court
Northern District of California

1    thoroughly review the file before entering into the stipulation, justifies setting aside a stipulation.

2    Nor would such a result be proper given that Defendant reasonably relied on the stipulation in

3    filing its response to the complaint.

4    **IV.    CONCLUSION**

5        Because the deadline to remove was no later than November 29, 2024 and Neiman Marcus

6    Group removed on December 2, 2024, the removal is untimely.  Therefore, the Motion is

7    GRANTED.  This case shall be remanded to San Francisco Superior Court.

8        **IT IS SO ORDERED.**

9

10   Dated:  February 19, 2025

11   _____

12   JOSEPH C. SPERO
     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11